1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LAU JUNITA TAYLOR,                          No.  2:14-cv-1156 CKD

12                   Plaintiff,

13          v.                                     ORDER

14    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,
15
                     Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for Disabled Widow's Benefits ("DWB") based on the

20   earnings account of her late husband pursuant to Title II of the Social Security Act ("Act").  For

21   the reasons discussed below, the court will deny plaintiff's motion for summary judgment and

22   grant the Commissioner's cross-motion for summary judgment.

23   BACKGROUND

24          Plaintiff, born January 29, 1955, applied on November 9, 2010 for DWB, alleging

25   disability beginning May 15, 2008.  Administrative Transcript ("AT") 75, 96, 169-171.  Plaintiff

26   alleged she was unable to work due to neck, shoulder and back problems and depression.  In an

27   amended decision dated January 16, 2013, the ALJ determined that plaintiff  was disabled

28   beginning on January 29, 2010 but was not disabled prior to that date and was not therefore

                                                  1

eligible for Widow's Insurance Benefits because she did not become disabled on or before March 31, 2009.[1]  AT 10-21.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50.  The claimant met the non-disability requirements for disabled widow's benefits set forth in [the Act].

> The prescribed period ended on March 31, 2009.

/////

---

[1]	To be eligible for DWB, plaintiff must show that she became disabled within seven years of her spouse's death.  20 C.F.R. § 404.335(c)(1).  In this case, the prescribed period began on March 17, 2002, the date plaintiff's spouse died.  Plaintiff premised her application on disability benefits under Title II.  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520,  404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

The claimant has not engaged in substantial gainful activity since the alleged onset date.

Since the alleged onset date of disability, May 15, 2008, the claimant has had the following severe impairments:  right neck and right shoulder and back pain, and degenerative disk disease of the lower back.

Since the alleged onset date of disability, May 15, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

After careful consideration of the entire record, the undersigned finds that prior to January 29, 2010, the date the claimant became disabled, the claimant has the residual functional capacity to perform less than the full range of light work as defined in [the regulations].  Specifically, the claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally; she could sit, stand and/or walk for six hours out of an eight-hour workday; she could frequently push/pull with the right upper extremity, but could never reach over head with the right upper extremity; she could frequently climb ramps and stairs, stoop, kneel, and crouch; she is never to climb ladders, ropes, and scaffolds; she could occasionally crawl and she is to have no exposure to hazards such as moving machinery and unprotected heights.

Since May 15, 2008, the claimant has been unable to perform any past relevant work.

Prior to the established disability onset date, the claimant was an individual closely approaching advanced age.  On January 29, 2010, the claimant's age category changed to an individual of advanced age.

The claimant has at least a high-school education and is able to communicate in English.

Prior to January 29, 2010, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.  Beginning on January 29, 2010, the claimant has not been able to transfer job skills to other occupations.

Prior to January 29, 2010, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

Beginning on January 29, 2010, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that

exist in significant numbers in the national economy that the claimant could perform.

The claimant was not disabled prior to January 29, 2010, but became disabled on that date and has continued to be disabled through the date of this decision. However, the claimant is not eligible for Widow's Insurance Benefits because she did not become disabled on or before March 31, 2009.

AT 12-21.

ISSUES PRESENTED

Plaintiff argues that the ALJ improperly discredited her testimony, improperly discounted lay witness testimony, improperly rejected the opinion of a treating physician, assessed a residual functional capacity which did not include all of her work restrictions, and posed an incomplete hypothetical to the vocational expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the

4

1   administrative findings, or if there is conflicting evidence supporting a finding of either disability

2   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

3   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

4   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

5   ANALYSIS

6        A.  Plaintiff's Credibility

7        Plaintiff contends the ALJ improperly discredited her testimony.  The ALJ determines

8   whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ

9   used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520,

10  522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.

11  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229,

12  1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent

13  reason for the disbelief").

14       In evaluating whether subjective complaints are credible, the ALJ should first consider

15  objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

16  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

17  then may consider the nature of the symptoms alleged, including aggravating factors, medication,

18  treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

19  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

20  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

21  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

22  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

23  01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and

24  effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

25  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

26  treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

27  in determining whether the alleged associated pain is not a significant nonexertional impairment.

28  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

1   on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

2   1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

3   (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

4   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

5   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

6           Plaintiff testified that she could not perform any kind of work due to the surgery on her

7   shoulder and problems with back pain.  AT 46, 51.  The ALJ found plaintiff's testimony

8   regarding the intensity, persistence and limiting effects of her symptoms to be only partially

9   credible.  AT 15.  In according only partial credibility, the ALJ considered the entirety of the

10  medical record, which showed routine, conservative and non-emergency treatment since the

11  alleged onset date.  AT 16, 521, 527, 542, 571, 662, 1271-1274,1437, 1448.  The ALJ noted that

12  the cervical spine x-ray dated May 20, 2008 showed no significant abnormal findings except

13  spondylosis of the lower cervical spine and that an August, 2008 MRI showed loss of the cervical

14  lordotic curvature, combined disc bulge and osteophytic ridge formation at C5-6 with no evidence

15  of cord effacement at this level and no evidence of spinal or neural foraminal stenosis at the C6-7

16  level.  AT 17.  With respect to plaintiff's shoulder impairment, which plaintiff testified was a

17  major reason she could not perform physical activity, the ALJ accurately summarized the medical

18  records which showed that although plaintiff continued to have problems after her industrial

19  injury in May, 2008, after right shoulder arthroscopy, plaintiff showed continued improvement

20  and that by June 2010 she had nearly complete full range of motion and was returned to work for

21  her right shoulder with no restrictions in July 2010.  AT 17, 1269.  The ALJ also considered

22  plaintiff's activities of daily living, which included taking care of her mother, preparing meals,

23  shopping, doing laundry, vacuuming, going to church and performing some yard work.  AT 16,

24  45 (plaintiff testified she performed in home support services work for her mother constituting

25  approximately 77 hours per month), 1136 (lifting vacuum), 1788 (lifting wheel chair), 1793

26  (helped mother loading scooter into car, works out regularly at home on treadmill and light

27  weights).  The ALJ also considered that plaintiff's alleged loss of function was not supported by

28  objective medical findings.  AT 16, 1426-1427 (EMG and nerve conduction study of upper

1    extremities essentially normal), AT 494, 521, 528, 542,1265 (neurological functioning on

2    physical examination intact), 1176, 1264-1269 (almost completely intact right shoulder range of

3    motion, mild tenderness on palpation to the neck, full neck range motion, intact rotator cuff

4    strength).  The reasons set forth by the ALJ for finding plaintiff only partially credible meet the

5    standards set forth above.  The credibility finding will not be disturbed.

6            B.  Lay witness evidence

7            Plaintiff also contends that the ALJ improperly discounted lay witness evidence.  "[L]ay

8    witness testimony as to a claimant's symptoms or how an impairment affects ability to work is

9    competent evidence, and therefore cannot be disregarded without comment."  Nguyen v. Chater,

10   100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir.

11   1993) (friends and family members in a position to observe a plaintiff's symptoms and daily

12   activities are competent to testify to condition).  "If the ALJ wishes to discount the testimony of

13   the lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

14   919.

15           Third party function reports were provided by plaintiff's son, Kevin Smith, and plaintiff's

16   friend, Lakesha Evans, who is also the care provider for plaintiff's mother.  AT 225-236.  The

17   ALJ found the reports to be only partially credible.  Specifically, the ALJ found the reports to be

18   helpful and generally credible with respect to the detail provided in the reports regarding

19   plaintiff's actual activities, but discredited the reports to the extent they purported to provide a

20   diagnosis or assessment of the severity of plaintiff's symptoms in relation to her ability to work.

21   AT 16.  The ALJ instead relied on the record medical opinions to discount the limitations

22   reported by the third parties.  Both reports indicated that plaintiff had limitations in walking,

23   sitting and use of her right hand.  AT 229, 235.  The ALJ appropriately rejected these assessments

24   by lay witnesses in favor of the state agency physician and treating physicians who opined that

25   plaintiff could perform a range of light work with occasional overhead reaching, had no

26   restrictions with the use of the right shoulder/arm, and had no sitting, standing and walking

27   limitations.  AT 1265 (Dr. Weiss), 1771-1775 (state agency), 1875-77 (Dr. Palomino).  The ALJ

28   also considered the inconsistency between the third party reports and the record medical evidence

1   which showed plaintiff had almost a complete range of motion in her right shoulder, had normal

2   gait and grip strength, and had no neurological deficits.  AT 1175, 1263, 1269.  Although not a

3   particularly compelling factor because there is no evidence in the record that plaintiff's adult son

4   is dependent on plaintiff for support, the ALJ also appropriately considered the possible bias of a

5   family member who would be motivated to help his mother receive benefits.  AT 16.  The reasons

6   set forth by the ALJ for the weight accorded to the third party evidence are germane as to each

7   witness and the evidence was properly discounted.

8       C.  Treating Physician's Opinion

9       Plaintiff further contends that the ALJ improperly rejected the opinion of her treating

10  physician, Dr. Palomino.  The weight given to medical opinions depends in part on whether they

11  are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d

12  821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

13  professional, who has a greater opportunity to know and observe the patient as an individual.  Id.;

14  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

15      To evaluate whether an ALJ properly rejected a medical opinion, in addition to

16  considering its source, the court considers whether (1) contradictory opinions are in the record,

17  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

18  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

19  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

20  rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at

21  830.  While a treating professional's opinion generally is accorded superior weight, if it is

22  contradicted by a supported examining professional's opinion (e.g., supported by different

23  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala , 53 F.3d

24  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

25  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

26  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

27  minimally supported opinion rejected); see also Magallanes , 881 F.2d at 751.  The opinion of a

28  /////

8

1   non-examining professional, without other evidence, is insufficient to reject the opinion of a

2   treating or examining professional.  Lester, 81 F.3d at 831.

3        Dr. Palomino, who saw plaintiff for treatment in her Worker's Compensation case, issued

4   a final report on June 3, 2010.  In that report, Dr. Palomino found on physical examination that

5   plaintiff showed very little tenderness over the shoulder girdle, rotator cuff strength was almost

6   completely intact, and grip strength was normal bilaterally.  AT 1176.  Dr. Palomino opined that

7   plaintiff had a 0% upper extremity impairment and 0% whole person impairment with respect to

8   her right shoulder.  With respect to the cervical spine, Dr. Palomino assessed plaintiff with a 6%

9   impairment of the whole person.  AT 1177.  In contrast to this opinion, on November 22, 2011,[2]

10  Dr. Palomino opined that plaintiff could reach overhead with her right arm less than 10% of the

11  time, grasp, turn, and twist with her right hand 25% of the time, and perform fine manipulations

12  with her right fingers only 25% of the time.  AT 1875-1881.  The ALJ credited only that portion

13  of Dr. Palomino's opinion that set forth no restrictions in sitting, standing or walking.  The ALJ

14  correctly noted that the determination of whether plaintiff is disabled within the meaning of the

15  Social Security Act is an issue reserved to the Commissioner and that an assessment of "total

16  temporary disability" is a term of art within the worker's compensation context and is not

17  determinative under the Social Security criteria.  AT 18.  Instead of crediting Dr. Palomino's

18  restrictive assessment from November 22, 2011, the ALJ instead relied on the opinion of the state

19  agency physicians who had full access to the medical record and opined that plaintiff had only

20  light limitations and that there was no continuous twelve month period of disability.  AT 19,

21  1772-1779.  Because the state agency opinion is consistent with the medical records and Dr.

22  Palomino's latter rendered opinion is directly contradicted by his prior opinion, his own findings

23  (AT 1176) and those of Dr. Weiss (AT 1265), there was no error in the weight accorded by the

24  ALJ to Dr. Palomino's opinion.

25  /////

26

27  _____
    [2]  The records indicate that Dr. Palomino saw plaintiff once during the intervening months (on
    December 16, 2010) for a referral to a certified massage therapist for treatment of her left
28  shoulder.  AT 1189.

1        D. Residual Functional Capacity

2            Plaintiff asserts the residual functional capacity does not account for all of the limiting

3    effects of her neck and right shoulder impairments and that the ALJ failed to include mental

4    limitations.  Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner

5    for assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a

6    person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a)

7    (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional

8    capacity reflects current "physical and mental capabilities").  RFC is assessed based on the

9    relevant evidence in the case record, including the medical history, medical source statements,

10   and subjective descriptions and observations made by the claimant, family, neighbors, friends, or

11   other persons.  20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3).  When assessing RFC, the ALJ must

12   consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of

13   work[.]"  20 C.F.R. §§ 404.1545(a)(4).

14           The ALJ assessed plaintiff with the residual functional capacity to perform less than the

15   full range of light work with certain limitations, i.e. plaintiff could never reach over head with the

16   right upper extremity, is never to climb ladders, ropes, and scaffolds, and is to have no exposure

17   to hazards such as moving machinery and unprotected heights.  AT 15.  Plaintiff contends that

18   plaintiff's diagnoses of cervical radiculopathy and adhesive capsulitis required a more restrictive

19   residual functional capacity.  A diagnosis does not an impairment make.  The ALJ fully

20   accounted for all of the limitations which were supported by clinical findings and the opinions of

21   Dr. Weiss and the state agency physicians.

22           Plaintiff also asserts that the residual functional capacity failed to account for her mental

23   impairments.  Although plaintiff testified she was depressed, there is no evidence of treatment in

24   the record and the lay witness reports indicated no problems with concentration.  AT 50, 229,

25   235.  The ALJ properly found that plaintiff's alleged mental impairment was not severe and that

26   plaintiff had only mild limitations in the functional areas of daily living, social functioning and

27   concentration, persistence and pace.  AT 13-14.  There was no error in failing to incorporate

28   mental restrictions in the residual functional capacity.

E. <u>Vocational Expert</u>

Finally, plaintiff contends that the hypotheticals posed to the vocational expert were incomplete.  Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff contends that the hypothetical relied on by the ALJ did not include all of the limitations assessed by Dr. Palomino.  As discussed above, the ALJ properly rejected the extreme limitations set forth by Dr. Palomino in his November, 2011 assessment.  The hypothetical as posed by the ALJ included all of the functional limitations supported by substantial evidence in the record.  AT 61-63.  There was no error in relying on the vocational expert's response to that hypothetical, which identified several jobs which plaintiff could perform with those restrictions.  AT 20-21, 62-63.

<u>CONCLUSION</u>

For the reasons stated herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 19) is denied;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 20) is granted; and

3.  Judgment is entered for the Commissioner.

Dated:  March 6, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4 taylor1156.ss.2